POLLASKY *v.* SCHMID.

MUNICIPAL CORPORATIONS — COMMON COUNCIL — ORDINANCES — PASSAGE OVER VETO—VOTES REQUISITE.

Under a charter provision requiring a two-thirds vote of "all the members elected" of the common council in order to pass an ordinance over the mayor's veto, where one alderman had died and another resigned, and their places were vacant, a two-thirds vote of the remaining aldermen was not sufficient to pass an ordinance over a veto.

*Certiorari* to Wayne; Carpenter, J. Submitted November 12, 1901. Decided December 3, 1901.

*Mandamus* by Marcus Pollasky to compel John A. Schmid, city clerk of the city of Detroit, to publish a certain ordinance. From an order denying the writ, relator brings *certiorari*. Affirmed.

*Groesbeck & Turner*, for relator.

*John W. McGrath* and *P. J. M. Hally*, for respondent.

MOORE, J. This is an application for a writ of *certiorari* to review the action of the circuit judge of Wayne county, who denied an application for *mandamus* to compel the respondent to publish a certain ordinance which petitioner claims was regularly adopted. The ordinance referred to was vetoed by the mayor. The charter divides the city of Detroit into 17 wards, and provides for the election of two aldermen from each ward. The legislative power of the city is vested in a common council, to be composed of aldermen elected from each ward. Charter, § 89. One of the aldermen died, and one resigned. After the ordinance was vetoed, a motion to pass it over the veto of the mayor received 22 votes, while 7 votes were in the negative. Section 103 of the charter provides that,

after the veto of any ordinance, resolution, or proceeding, the common council shall proceed to reconsider the vote by which the same was passed, and, after such reconsideration, two-thirds of all the members elected of the common council shall be necessary to pass or adopt the same. The sole question is as to the construction of this provision of the charter. The petitioner claims that, though 34 aldermen were in fact elected, as one had died and one resigned, the same number of votes would suffice to pass an ordinance over the veto of the mayor as would secure the passage of the ordinance if the council was made up of only 32 members.

There are not many authorities bearing upon the question, and they are not uniform. *State* v. *Orr*, 61 Ohio St. 384 (56 N. E. 14), sustains the contention of the petitioner, but we are not satisfied with the reasoning of the case. In *City of San Francisco* v. *Hazen*, 5 Cal. 169, the charter provided for a board of aldermen and a board of assistant aldermen, each to consist of one member from each ward; that a majority of each should constitute a quorum; and that no ordinance or resolution should be passed except by a majority of all the members elected. An ordinance was passed by a vote of four to three, there being a vacancy in the board by reason of the resignation of a member. Held, that the ordinance was not passed by a majority of all the members " elected," and was therefore void. This case was followed in *McCracken* v. *City of San Francisco*, 16 Cal. 591, where Field, C. J., wrote the opinion, declaring an ordinance passed under similar circumstances a nullity.

In *Pimental* v. *City of San Francisco*, 21 Cal. 351, Mr. Justice Field, speaking for the court, said:

" At the time this ordinance was acted upon by the board of assistant aldermen, there was a vacancy in the board, occasioned by the resignation of one of its members, so that of the eight members elected only seven remained in office. Of this number four members voted for the passage of the ordinance, and three against it. As a conse-

quence the ordinance was not passed, not having received the necessary vote required by the charter then in force. The charter vested the legislative power of the city in a common council, consisting of a board of aldermen and a board of assistant aldermen, each board to be composed of eight members; and fixed the limits of their authority. * * * It declared that no ordinance should be passed 'unless by a majority of all the members elected to each board.' The ordinance in question, therefore, not having received the vote of a majority of all the members elected, was never passed. It was, in fact, rejected; as much so as if every member had cast his vote against its passage. It was, therefore, for all purposes, an absolute nullity."

In *Satterlee* v. *City of San Francisco*, 23 Cal. 314, the question was reconsidered. It was claimed that the alderman who it was alleged had resigned was not in fact elected, but was an alien, and not, therefore, eligible to office; but the court held that he had been regularly elected, that the charter provided that each board should judge of the qualifications of its members, that he was an officer *de facto*, and that the validity of his election could not be inquired into in a collateral proceeding; and the court followed the other cases cited from that State. See, also, *Lawrence* v. *Ingersoll*, 88 Tenn. 52 (12 S. W. 422, 6 L. R. A. 308; 17 Am. St. Rep. 870); *Rex* v. *Devonshire*, 1 Barn. & C. 609; *Rex* v. *Bower*, Id. 492; *Rex* v. *May*, 4 Barn. & Adol. 843; *Rex* v. *Morris*, 4 East, 17; *Rex* v. *Bellringer*, 4 Term R. 810; *Rex* v. *Miller*, 6 Term R. 268.

In *Peck* v. *Berrien Co. Sup'rs*, 102 Mich. 346 (60 N. W. 985), the resolution received 18 out of 26 votes, but 2 of the 18 had not been elected, but had been appointed to fill vacancies. The statute provided that the board of supervisors should have power, by a vote of two-thirds of all the members-elect, to designate, etc. Mr. Justice HOOKER in that case says:

"We find no authority for the proposition that a township temporarily represented by an appointed supervisor has not the same voice upon the board that it had before the vacancy. * * * That the use of the term 'elect' in section

489, 1 How. Stat., has a purpose, is plain; but we think it more reasonable to believe that it was intended to require the consent of two-thirds of a full board, than that it was designed to deprive townships, which should be represented by appointive officers, of a voice in the proceedings. It was intended to preclude action by two-thirds of a quorum, or of a board whose numbers had been lessened by vacancies."

It is admitted that, if 2 of the 34 aldermen had been temporarily absent, the ordinance would not have been passed. We cannot see how the fact that 2 of the 34 aldermen elected were permanently absent, instead of being temporarily so, would change the terms of the charter. The language is not ambiguous. The purpose, doubtless, was that, when legislation was proposed the wisdom of which was in so much doubt as to meet with the veto of the mayor, before it could become a law it should receive the vote of two-thirds of all the aldermen, when all the wards of the city were fully represented in the council.

The action of the circuit judge is affirmed.

The other Justices concurred.