OSCAR A. MUELLER v. C. HOFFMEISTER UNDERTAKING & LIVERY COMPANY, a Corporation, Appellant.—121 S. W. (2d) 775.

Division One, November 19, 1938.

*John E. Mooney* for appellant.

*W. Scott Hancock* and *George F. Johnson* for respondent.

BRADLEY, C.—This cause raised the constitutional validity of an amendment to the general zoning ordinance of the City of St. Louis, and also seeks to enjoin defendant from structurally altering or adding to a building used as a mortuary. The cause was submitted to the trial court on an agreed statement of facts. The court found that the amendment was unconstitutional and void and enjoined defendant as asked. Defendant appealed.

Plaintiff owns residence property fronting 41 feet on the east line of Compton Avenue and extending east 149 feet, 4 inches to an alley. Defendant, for many years, has operated a mortuary or undertaking business, in the city, with its principal office and place of business at 7814 South Broadway, and also owns 68 feet, 1 1/8 inches fronting on the east line of Compton, and extending east 149 feet, 4 inches to the alley, and has, since 1915, operated a mortuary or undertaking business thereon. Prior to February, 1933, the 30 feet fronting on the east line of Compton, and joining plaintiff's property on the north, and defendant's on the south, was owned by one Vorwald, and occupied as a residence. March 21, 1933, defendant acquired the Vorwald property. Bellerive Boulevard, an east and west street, extends along the south side of defendant's property. The city's general zoning ordinance was passed in 1926, and the whole of the block in which lies the property of plaintiff and defendant was classified as residence property and placed in a residence district. The general zoning ordinance (Sec. 8) provided, however, that a lawful use existing at the time of the adoption of the zoning ordinance, although such use did not conform to the provisions of the ordinance, might continue, and provided that such use might be extended throughout the building, provided that "no structural alterations were made, except those required by law or ordinance."

January 11, 1934, defendant made application to the city building commissioner for a permit to "alter and make additions to the present mortuary located on the northwest corner of Bellerive and Compton Avenues." The purpose was to not only alter the building then in use as a mortuary, but to remove the Vorwald residence building and erect on this lot an addition to the mortuary. The building commissioner refused the permit. Defendant appealed from the decision of the building commissioner to the board of adjustment, and on February 7, 1934, this board granted the permit. March 9, 1934, plaintiff filed, in the circuit court, a petition for writ of certiorari. The petition was against J. W. Ludwig et al., constituting the board of adjustment. Certiorari writ was issued, and the board filed return and the certiorari cause was submitted. Thereafter, and on December 26, 1934, the court trying the certiorari cause, reversed the decision granting defendant the permit, and ordered that the original decision of the building commissioner, refusing the permit, be rein-

stated, and enjoined defendant "from proceeding to carry out its plans for a structural alteration of said building."

June 22, 1934, and while the certiorari case was pending in the circuit court, the board of aldermen amended the general zoning ordinance, by passing what is commonly known as spot zoning bill or ordinance, which changed all of defendant's property fronting on Compton Avenue from residence classification to commercial classification. July 12, 1934, the mayor vetoed the spot zoning ordinance, but on January 11, 1935, the board of aldermen passed the ordinance over the veto. It is the validity of this spot zoning ordinance that is involved in the present cause.

The spot zoning ordinance, that is, the amendment to the general zoning ordinance, recites that its purpose is to amend the general zoning ordinance "by extending the commercial district as shown on the use district map, accompanying said ordinance, as amended, to include a parcel of ground," and then follows a description of defendant's property fronting on Compton Avenue. Section 2 of the spot zone ordinance is the emergency clause, providing that "this ordinance being necessary for the immediate preservation of the public peace, health and safety, an emergency is hereby declared to exist, and this ordinance shall become effective immediately upon the approval by the Mayor." While the spot zone ordinance recites that its purpose is to *extend* the commercial district, an exhibit map, a part of the agreed statement, shows the commercial district was not *extended,* but that defendant's property was merely classed as commercial instead of residential, and that before and after the change, defendant's property was in the very midst of a residential district as fixed in the general zoning ordinance.

Defendant contends that the spot zoning ordinance, changing defendant's property from residential to commercial, and under which ordinance it proposes to structurally alter its original mortuary building and add an addition thereto, which addition would occupy the Vorwald lot, is a valid amendment to the general zoning ordinance. The enabling act (Secs. 7259 et seq., R. S. 1929, Mo. Stat. Ann., secs. 7259, pp. 5855 et seq.), authorizing the city to pass the general zoning ordinance, "contemplates the same careful, serious, and intelligent consideration of an amendment to a zoning ordinance as is required in the preparation and enactment of an original ordinance on zoning." [Wippler v. Hohn et al., 341 Mo. 780, 110 S. W. (2d) 409, 1. c. 411.] The general zoning ordinance established in the city these districts: Residence, multiple dwelling, commercial, industrial, and unrestricted. It is primarily the duty of the city to say in what district any area in the city should be placed, and "if a classification is reasonably doubtful, the judgment of the court will not be substituted for the judgment of the city." [Wippler case, supra, 110 S. W. (2d) 1. c.

411; Michigan-Lake Bldg. Corp. v. Hamilton et al., 340 Ill. 284, 172 N. E. 710, l. c. 715.]

In the Michigan-Lake Bldg. Corp. case it is said: "It is primarily the province of the municipality to which the zoning function is committed to draw the line of demarcation as to the use and purpose to which property shall be assigned or placed, and it is neither the province nor duty of courts to interfere with the discretion with which such bodies are invested, in the absence of a clear showing of an abuse of that discretion." A note on the Illinois case will be found in 25 Ill. Law Review, 817.

The Wippler case, supra, was like the present case. There the general zoning ordinance of St. Louis was amended so as to change the classification of two lots from "multiple dwelling" to "commercial," and this court said of that change (110 S. W. (2d) l. c. 411) that the record indicated that the reclassification was made under influences antagonistic to the general welfare, "and solely as a favor to defendant Hohn." And it was held in that case that the amendment changing the classification of the two lots was arbitrary and unreasonable. And what is said in the Wippler case as above appears, is, we think, quite applicable in the present case.

Defendant cites Glencoe Lime & Cement Co. v. City of St. Louis et al., 341 Mo. 689, 108 S. W. (2d) 143, and State ex rel. Oliver-Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720. The Glencoe Lime & Cement Co. case was to enjoin the city and its officers from enforcing a zoning classification of a lot as residential. The chief question was on "the nonconforming use" provision (Sec. 8, referred to, supra) of the general zoning ordinance. The lot, prior to the passage of the general zoning ordinance in 1926, had been used as a storage yard for building material. In the course of the opinion it is said "the zoning authority is lodged with the legislative body of the city. The courts are without jurisdiction in the matter." Such expression was not intended to mean, as appears from the opinion, that redress may not be had in the courts when the classification of property by a zoning ordinance is arbitrary, that is, without substantial reason. There is nothing in State ex rel. v. Christopher, supra, to support defendant.

We hold that the classification made of defendant's property in the present case by the spot zone ordinance was, under the facts, arbitrary and without substantial reason, and that said ordinance is void.

It follows that the judgment should be affirmed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.