**Stewart E. SMITH et al., Appellants,**

v.

**CITY OF LEE'S SUMMIT, Missouri, et al., Respondents.**

**No. 25130.**

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

Thomas J. Walsh, Lee's Summit, for appellants.

William A. Piedimonte, and C. William Kramer, of Piedimonte & Cochran, Independence, for respondent Homestead Enterprises, Inc.

Charles Edward Lavery, Lee's Summit, for respondents City of Lee's Summit and Board of Aldermen.

HOWARD, Judge.

This is a proceeding for writ of certiorari to review the action of the city council of the City of Lee's Summit, Missouri, sitting as a board of zoning adjustment, in granting a rezoning petition in the form of a special ten year use permit for the operation of a mobile home park in a recently annexed area of the city. The petition in the alternative sought a declaratory judgment and injunctive relief. After trial to the court without a jury, the court, pursuant to the writ of certiorari theretofore issued, affirmed the action of the city and denied the other relief prayed for. Such judgment has been duly appealed to this court. We shall refer to the parties as they appear below.

Plaintiffs contend that the trial court's affirmance of the zoning action of the city is erroneous because the rezoning ordinance was not properly passed due to a

claimed conflict of interest of one of the council members; that the rezoning is invalid because of the lack of an overall plan for the entire recently annexed area and because it constitutes "spot zoning".

As to the claimed conflict of interest, we must consider the activities of two corporations and one individual: they are Homestead Enterprises, Inc., Homestead Developers, Inc., and an individual by the name of G. L. Little, who was the president and chief executive officer of both corporations. It appears that in May of 1966, Homestead *Enterprises*, Inc. filed an application for rezoning of a described tract of land in the northeast part of the city which had been annexed by the city on January 1, 1965. On August 9, 1966, a new or amended application for rezoning was filed. On August 22, 1966, one of the members of the city council, Logan Childers, entered into a lease for the rental of a small office space at 10 East Second Street in Lee's Summit. This building was owned by Homestead *Developers*, Inc. This lease was negotiated by G. L. Little and Mr. Childers. The first part of the lease recited that it was between Homestead *Developers*, Inc. as lessor and Logan Childers as lessee. However, the lease was signed by Childers and by G. L. Little. The corporate name of Homestead *Developers*, Inc. did not appear above or in connection with the signing of the lease. This lease was for one year at the rental of $50.00 per month with the right in the tenant to renew for an additional year and covered approximately 500 square feet of office space.

■ The amended zoning application of Homestead *Enterprises*, Inc. was the subject of a hearing by the zoning board on August 29, 1966, and by the Board of Aldermen on November 1, 1966. Both the proponents and opponents of the proposed rezoning testified extensively at both hearings. Thereafter, on December 20, 1966, the Board of Aldermen of the city passed Ordinance No. 981 granting the application for rezoning in the form of a ten year use

permit for the purpose of operating a mobile home park. The vote on this ordinance was three "yes" and three "no". Childers voted "yes". The tie was broken by the mayor who voted "yes" and the ordinance was passed. G. L. Little testified by deposition taken by plaintiffs that the building owned by Homestead *Developers*, Inc. consisted of 9 offices, each essentially the same size. These were given even number addresses from 2 to 18, inclusive. At some time prior to the lease to Childers, units 16 and 18 had been combined into one unit. Although Little's testimony was presented in a disorganized and confusing manner, it appears that these units have rented at various times and for various periods for rentals ranging from $45.00 a month to $165.00 a month. The lease to Childers in August, 1966, called for a rental of $50.00 a month. The next year, although Childers had an option to renew at the same rent, a new lease was entered into at $60.00 per month. Little testified that there had been numerous vacancies in these offices and that the vacancies existed primarily in the middle of the building. He testified that the end units did not remain vacant. He further testified that not long prior to the lease to Childers, an urban renewal program was announced which would change the grade of the street in front of the building and interfere with access thereto. He testified that in consequence thereof, more and more vacancies were occurring in these offices and those tenants who still occupied offices were giving notices to terminate their leases. Without a detailed recital of all such testimony, suffice it to say that we have carefully examined the record and conclude, as did the trial court, that this evidence does not disclose favored treatment given Mr. Childers. Even if we were to conclude that the rentals charged Childers were unduly low that would not be dispositive of the issue here presented.

■ Plaintiffs contend that this lease relationship created a conflict of interest and disqualified Childers from voting on the proposed rezoning. We first note that

in Coffin v. City of Lee's Summit, Mo. App., 357 S.W.2d 211, this court specifically held that the action of the city council in passing upon zoning and rezoning matters is the exercise of a legislative function and under the doctrine of separation of powers, the courts will not inquire into the motive of a member of the city council in voting on legislative matters. This decision was cited with approval by our Missouri Supreme Court en Banc in the recent decision in Strandberg v. Kansas City, 415 S.W.2d 737; and the principles announced in the Coffin decision were approved and affirmed. Therefore, in the absence of any specific statutory provision, we would not inquire into the motive of Mr. Childers in casting his vote in favor of the rezoning and could not disqualify him from acting in his capacity as a member of the city council.

However, plaintiffs contend that by reason of the enactment of Sections 105.450 to 105.495, inclusive, V.A.M.S., which were enacted by Laws of 1965, H.B.No. 422, Mr. Childers was disqualified from voting because of an impermissible conflict of interest. The applicable provision is found in Section 105.495 and reads as follows:

> "No officer or employee of an agency shall enter into any private business transaction with any person or entity that has a matter pending * * * upon which the officer or employee is or will be called upon to render a decision or pass judgment * * *"

This section further provides that if such private business transaction exists, the officer or employee shall be disqualified from acting.

Both parties seem to assume that this statute is applicable. Therefore, in spite of the obviously serious question of its applicability, when the definition of the word "agency", as found in section 105.450, is read in conjunction with said section 105.-495, we shall assume without deciding and for the purposes of this opinion only, that section 105.495 may be applicable. Likewise, we shall assume without so deciding, that such a leasing of office space would be a "private business transaction" within the meaning of section 105.495.

Defendants' argument in opposition to the existence of the conflict of interest claimed by plaintiffs, points out that it is only a "private business transaction with any person or entity that has a matter pending" which is proscribed by the statute. They emphasize that the zoning application was filed by Homestead *Enterprises,* Inc., whereas the leased premises were owned by Homestead *Developers,* Inc. These are two separate and distinct corporate entities. The evidence is that Mr. Little was president and chief executive officer of both corporations. Some of the other officers of the two corporations were the same. As to the directors, some individuals were directors of both corporations, whereas some individuals were directors of only one or the other of the corporations. There was no evidence as to who owned the stock of which corporation or in what amount. Thus, while Mr. Little was president and chief executive officer of both corporations, there is no evidence that he had controlling stock interest in either. There is no evidence other than that which has heretofore been recited as to the activities of these two corporate entities. There is no showing of any connection whatsoever between the conduct of Homestead *Developers,* Inc. and that of Homestead *Enterprises,* Inc., either in the matter of the proposed mobile home park or in any other matter.

As heretofore pointed out, the lease to Childers recites that Homestead *Developers,* Inc. is the landlord but the lease is signed with the signature of G. L. Little. There is nothing in this part of the lease to indicate that such signature was affixed as an officer or agent of the corporation recited to be the landlord. On this basis, there is some argument that the lease was in fact between Mr. Little, as an individual, and Mr. Childers. We do not need to reconcile this inconsistency because in ei-

ther event this is not a lease from Homestead *Enterprises*, Inc. to Childers and the rezoning application was the application of Homestead *Enterprises*, Inc. It was not the application of G. L. Little and it was not the application of Homestead *Developers*, Inc.

■ It is to be noted that the statute prohibits private business transactions between a public officer or employee and "any person or entity that has a matter pending" and which he will be called to pass upon. Thus, before we can find that section 105.495 is applicable to the facts before us, we must find that Homestead *Enterprises*, Inc., Homestead *Developers*, Inc. and G. L. Little are all (or at least two of them) one and the same "person or entity". As defendants correctly point out, this would require us to brush aside or disregard the separate legal entity of the two corporations and the individual. While this can be done in an appropriate case as was pointed out by this court in Public Service Commission v. Cirese, 240 S.W.2d 186, and by our Supreme Court in May Department Stores Co. v. Union Electric Light & Power Co., 341 Mo. 299, 107 S. W.2d 41, such piercing of the corporate veil can only occur where the separate legal entities of the corporations and the individual are used to perpetrate fraud or injustice or to accomplish an unlawful purpose. The mere fact that one individual may be the executive officer of two or more corporations or even that the same individual might have absolute stock control of both does not justify a court in disregarding proper legal forms. See, in addition to the cases heretofore cited, National City Bank of St. Louis v. Carleton Dry Goods Co., 334 Mo. 339, 67 S.W.2d 69; Lawton-Byrne-Bruner Ins. Agency Co. v. Stiers Bros. Const. Co., Mo.App., 186 S. W.2d 480; and Eisenbarth v. Equity Mut. Ins. Co., Mo.App., 189 S.W.2d 168.

■ From a consideration of all the facts as outlined heretofore, we cannot conclude that either Mr. Little and Homestead *Enterprises*, Inc. are alter egos or that Homestead *Enterprises*, Inc. and Homestead *Developers*, Inc. are one and the same entity or that Mr. Little controls or uses one or both of these corporations or is in any manner able to manipulate them for the purpose of perpetrating fraud or injustice or to accomplish an unlawful purpose. Consequently, this court is not authorized to disregard the separate corporate and individual entities involved and must observe the entities as they legally stand. It therefore appears that Mr. Childers did not have any "private business transaction" with an entity (Homestead *Developers*, Inc.) that had a matter pending upon which he (Childers) would be called upon to pass. We therefore conclude that no impermissible conflict of interest existed between Childers and the applicant for rezoning and as to this contention of plaintiffs, the rezoning ordinance was legally passed.

■ Plaintiffs next contend that the rezoning here in question was invalid because the city had not adopted an overall zoning plan and classification for the entire annexed area. As authority supporting this contention, plaintiffs rely solely on the decision by our Supreme Court in the case of State ex rel. Sims v. Eckhardt, 322 S.W.2d 903. We conclude that the situation here presented is so factually different from that considered in Eckhardt that the latter case does not rule the case at bar.

The overall zoning ordinance of the city of Lee's Summit provides that any land thereafter annexed by the city will automatically come under the provisions of the zoning ordinance and will be classified and used for agricultural purposes until such time as the city has an opportunity to study and reclassify such annexed areas. This is obviously an interim classification which is designed to be temporary in nature and contemplates an orderly change in zoning classification as time permits. In the Eckhardt case, supra, the overall zoning ordinance of the city of Columbia did not provide for any such interim zoning classification. Rather, the city passed a

zoning ordinance applicable to an annexed area permanently fixing its zoning classification. This was done without the formalities affirmatively required by statute as a condition to original zoning. The Supreme Court in the Eckhardt case held that such permanent zoning of the annexed area could be validly accomplished only by observing and following all of the forms and procedures required by statute for original zoning. The court there expressly declined to rule upon the validity of an interim zoning classification. Likewise, in the case at bar, the plaintiffs do not challenge the legality of the interim zoning classification of the land in question as agricultural. They only challenge the change therefrom by the rezoning ordinance. Consequently, the principles laid down in the Eckhardt case have no applicability to the case at bar. As heretofore stated, it is obvious that the classification of this land as agricultural was strictly temporary. If it were to be permanent there would have been no valid reason for the annexation of such an agricultural area. Both the original zoning ordinance and the annexation of this area contemplated a change in use. This land was annexed on January 1, 1965, and at the time of trial in November of 1967, a land use study by outside "experts" had not yet been completed and the city had not received final report thereof. Plaintiffs cite no authority requiring us to hold that the zoning of such annexed area cannot be changed for years after the annexation until some overall study is completed. Both the overall zoning ordinance and the action of annexation contemplate change from agricultural use of the land. We cannot hold that the ten year permit for the use of this tract of land as a mobile home park is so arbitrary and unreasonable under all the circumstances shown as to render it invalid. We therefore rule this contention of plaintiffs against them.

Lastly, plaintiffs contend that this rezoning must be declared void because it constitutes "spot zoning". They rely solely on the case of Mueller v. C. Hoffmeister Undertaking & Livery Co., 343 Mo. 430, 121

S.W.2d 775. They might well have cited also the decision of this court in Numer v. Kansas City, 365 S.W.2d 753. In both of these cases, the court found that the rezoning of a small tract (one lot) to permit a use inconsistent with the entire surrounding area was arbitrary and unreasonable and therefore invalid.

The principles governing the decision of this issue were more recently set out by our Supreme Court en Banc in Strandberg v. Kansas City, 415 S.W.2d 737. There the court reiterated the principles laid down in prior cases that in ruling upon such contentions as are here presented by plaintiffs, the rezoning must be allowed to stand unless it is clearly proved to be invalid and that the burden of such proof rests upon the party challenging the validity of the rezoning. The court points out that unless the rezoning action is arbitrary and unreasonable and bears no relation to public health, safety, morals or general welfare, the court cannot invalidate the action of the city; that in reaching its conclusion, the court cannot substitute its judgment for the judgment of the city council; that the council can properly consider anticipated future development of the area in reaching its conclusion to rezone; that the courts are not concerned with the wisdom of the rezoning action but that if the action is reasonably debatable, it must be affirmed.

A careful consideration of all of the evidence in the case at bar leads us to the conclusion that the rezoning ordinance here before us providing for a ten year use permit for a mobile home park is not arbitrary and unreasonable. We cannot find from the evidence that such action bears no relation to the public health, safety, morals, or the general welfare. While we may question the wisdom of this action, we cannot substitute our judgment for that of the city council. See State ex rel. Christopher v. Matthews, Mo., 240 S.W.2d 934.

We therefore affirm the judgment of the circuit court upholding the validity of the rezoning here in question.

All concur.