**STATE of Missouri ex rel. J. R. STEWART, Appellant,**

v.

**The Honorable Richard KING, and Bruce Lowrey, Respondents.**

**No. KCD 29130.**

Missouri Court of Appeals, Kansas City District.

Jan. 30, 1978.

Rehearing Denied Feb. 27, 1978.

Application to Transfer Denied May 9, 1978.

J. Courtney Bowlin, Blue Springs, Robert A. Iannone, Kansas City, for appellant.

James S. Cottingham, Richard G. Carlisle, Independence, for respondents.

Before SHANGLER, P. J., WASSER-STROM, J., and MASON, Special Judge.

WASSERSTROM, Judge.

The question for determination is whether an amendment to the Independence Zoning Ordinance proposed by relator Stewart was adopted by the requisite majority of the Independence City Council. The respondent mayor declared to the contrary, and Stewart applied to the Circuit Court for a writ of mandamus commanding the mayor to declare the ordinance passed. The Circuit Court issued its alternative writ of mandamus but after hearing the case on stipulation of facts and briefs, it quashed the alternative writ. From that ruling, Stewart pursues this appeal.

Stewart owns certain land in Independence, Missouri, zoned District R–1. He filed an application to the Independence City Planning Commission for rezoning of

that property to District C–P–O. The Commission held an evidentiary hearing, following which it recommended to the City Council that the zoning application be granted.

Opponents to the rezoning duly filed a protest, which had the effect under Section 89.060 RSMo 1969 of requiring a "favorable vote of three-fourths of all the members of the legislative body." The City of Independence has a council of seven members, of whom the mayor is one. At the time Stewart's proposed zoning amendment came before the council, there was a vacancy by reason of the death of Councilman Theiss. When the ordinance for the proposed zoning amendment came up for final roll call, Mayor King abstained, indicating his intention not to vote on the bill because his law firm represented the applicant Stewart. A vote was then taken, resulting in four votes in favor of the proposed change and one against. Mayor King thereupon declared that the bill had failed of passage.

The parties agree that in computation of the requisite three-fourths majority, the number of councilmen to be considered shall be reduced by reason of Councilman Theiss' death. They further agree that if the number of members divided by three-fourths results in a fraction, then the required number must be rounded up to the next higher full number. So, if King must be counted as a member of the council, the required vote for passage of the ordinance was five; and if King's abstention is not counted as a vote for the majority, then the four affirmative votes cast in favor of the ordinance were insufficient.

Stewart offers two alternative answers to this problem which would give a result in his favor. He argues, first, that when King abstained, his vote should have been considered as concurring with the majority thus giving a tally of five to one in favor of the ordinance. He argues, second, that King's abstention from voting because of conflict of interest should be treated as a disqualification which reduces the number of councilmen for the purpose of this vote,

with the result that the council became a body temporarily of only five members, of which the four affirmative votes actually cast constituted a three-fourths majority.

## I.

In support of the first of those arguments, Stewart relies on the common law rule that a councilman has a duty to vote. As a corollary to that rule, any passed vote is to be treated as an acquiescence in and a vote with the majority. *Bonsack & Pearce, Inc. v. School District of Marceline*, 226 Mo.App. 1238, 49 S.W.2d 1085 (1932); *Mullins v. Eveland*, 234 S.W.2d 639 (Mo.App. 1950).

However, this case is governed by statute, not the common law. Section 89.060 requires a *favorable* vote of *all* the councilmen. This rather clearly means that there must be actual votes affirmatively cast by three-fourths of all councilmen existing at the time of the vote. This precludes counting in favor of passage any vote only constructively (but not actually) cast.

In opposition to this conclusion, Stewart relies heavily upon *Northwestern Bell Telephone Co. v. Board of Commissioners of Fargo*, 211 N.W.2d 399 (N.D.1973). In that case, out of five commissioners two voted yes, one voted no and two abstained because of conflict of interest. The North Dakota court held the motion passed on the theory that the two passed votes had to be counted on the side of the majority. The court reached this result despite a statute requiring the concurrence of a majority of "all of the members" of the governing body.

*Northwestern Bell* does support Stewart, but that opinion constitutes a minority point of view. A considerable collection of cases on point appears in an annotation "Abstention from voting of member of municipal council present at session as affecting requisite voting majority," 63 A.L.R.3d 1072, Section 7, l.c. 1091, showing a majority of the decisions throughout the country to be contrary to that reached in *Northwestern Bell*. See also *Ram Development Co. v. Shaw*, 244 N.W.2d 110 (Minn.1976).

Because of our own analysis of Sec. 89.-060, which is supported by the weight of authority in other jurisdictions, we decline to accept Stewart's first argument.

## II.

■ Stewart's second argument, which he presses as apparently his preferred position, rests on the concept that Mayor King's disqualification for interest is equivalent to non-availability by reason of death and should equally justify a reduction in the number of votes required to be taken into consideration. He cites for this argument *City of Alamo Heights v. Gerety*, 264 S.W.2d 778 (Tex.App.1954).[1]

Essential to this argument, however, is Stewart's unarticulated assumption that Mayor King was in fact disqualified. Not so. Disqualification for present purposes should be understood as meaning a bar from action because of a public standard established either by legislative mandate or court decision. As to court decisions covering the present situation, the results reached in different jurisdictions are not in complete harmony. Nevertheless, the court decisions in Missouri are quite clear on this matter as spelled out in *Coffin v. City of Lee's Summit*, 357 S.W.2d 211 (Mo.App. 1962); *Strandberg v. Kansas City*, 415 S.W.2d 737 (Mo. banc 1967) and *Smith v. City of Lee's Summit*, 450 S.W.2d 485 (Mo. App.1970). Under these decisions, a legislator is barred by conflict of interest from voting only on matters of a judicial, quasi judicial or contractual nature; and the courts will not interfere with his vote in a purely legislative matter absent some statutory provision limiting his right to vote. Furthermore, those cases expressly hold that an amendment to a zoning ordinance is a purely legislative matter within the scope of this rule. Therefore the Missouri courts would not interfere with Mayor King's vote.

Nor is there any legislative direction which barred Mayor King from voting on this ordinance. The City of Independence has adopted as part of its Charter a code of ethics for councilmen and other officers and employees of the city.[2] Section 5.3(3) under that Code provides:

"Councilmen and other officers and employees who have a direct or indirect financial or other private interest in any proposed legislation and who participate in decision before or give official opinion to the council, shall publicly disclose the nature and extent of such interest, and the disclosure shall be entered in the journal of the council."

It is to be noted that the code of ethics does not prohibit a councilman from voting upon a matter in which he has a private interest. The sole requirement is that he make a public disclosure thereof. The implication can fairly be drawn that the code of ethics was intended to permit the councilmen to vote, once the disclosure of interest had been made.

This provision and interpretation of the Independence code of ethics falls within the pattern of the State statutes on "Regulation of Conflicts of Interests and Lobbying," Section 105.450 et seq., RSMo 1969. Section 105.460 provides that if the governor, lieutenant governor or any member of the general assembly has a substantial personal or private interest in any bill before the general assembly, then he shall "before he passes on the measure or bill, file a written report of the nature of the interest to the chief clerk of the house or the secretary of the senate * * *." This section carries the plain implication that the only requirement is public disclosure and that after disclosure the official in question has complete freedom to exercise his right of approval or disapproval of the legislative proposal.

---

1. The author of the annotation in 63 A.L.R.3d at l.c. 1080 discusses *City of Alamo Heights* with approval. See, however, to the contrary *Livesey v. Borough of Secaucus*, 97 A. 950 (N.J.1916).

2. The Independence Charter and its provisions are entitled to judicial notice. *State ex rel. Voss v. Davis*, 418 S.W.2d 163 (Mo.1967); *Purdy v. Foreman*, 547 S.W.2d 889, 891 (Mo.App. 1977).

Mayor King's action in declining to vote because of his conflict of interest was highly commendable and constitutes a tribute to his sense of ethical conduct. His act of abstaining, however, was his own personal decision, uncoerced by any public rule of law. His abstention in this instance therefore cannot be distinguished from any other voluntary abstention and falls within the rule already discussed in Section I of this opinion. Stewart's second argument therefore also must be rejected.

Affirmed.

All concur.

## ON MOTION FOR REHEARING

PER CURIAM:

In his motion for rehearing, Stewart challenges the statement in the opinion that there is no legislation which barred Mayor King from voting on the zoning ordinance amendment. In this connection Stewart calls attention for the first time to Section 105.495 RSMo 1969, which provides:

"No officer or employee of an agency shall enter into any private business transaction with any person or entity that has a matter pending or to be pending upon which the officer or employee is or will be called upon to render a decision or pass judgment. If any officer or employee is already engaged in the business transaction at the time that a matter arises, he shall be disqualified from rendering any decision or passing any judgment upon the same. * * *."

He cites (for the first time) and relies upon Attorney General's Opinion No. 146, March 4, 1966, and *Smith v. City of Lee's Summit*, 450 S.W.2d 485 (Mo.App.1970) to show that a city constitutes an "agency" within the meaning of that statutory provision and that city councilmen are covered thereunder.

Whether the city council of Independence is a covered "agency" within the meaning of Section 105.495 depends upon the statutory definition contained in Section 105.-450(1) which defines the term "agency" to mean, "any department, office, board, commission, bureau, institution or any other agency, except the legislative and judicial branches, of the state or any political subdivision thereof including counties, cities, towns, villages, school, road, drainage, sewer, levee and other special purpose districts." A reading of this definition leads to the immediate conclusion that a city council (clearly the "legislative branch" of the city) is expressly excluded from the scope of the definition. Nevertheless, Attorney General's Opinion No. 146 undertakes to establish to the contrary upon the following forced reasoning:

"We meet at once with the problem as to what is included and what is excluded in the Act's definition of 'Agency'. The exception clause above referred to read literally excepts the legislative and judicial branches of the State and all the political subdivisions therein mentioned including counties, cities and others. We note, however, that House Bill 422, as Truly Agreed To and Finally Passed, has a comma immediately after the words 'judicial branches'. If this definition is read literally, agency would be applicable only to the executive department and boards and commissions of the state of Missouri. If this language were construed with the comma following the word 'branches' as the bill was passed we meet some other difficult problems. This would then provide an exception and make the law not applicable to the judicial and legislative branches or political subdivisions. This would produce most difficult and artificial interpretations of what is executive and what is legislative in cities, school districts, road districts and other specified districts. This would cause interpretation that would or might be artificial and unrealistic. It might also largely nullify what we believe was the legislative intent and purpose to stop the conflict of interest evil. We are convinced that the legislative intent was that the exception clause was intended to apply only to the Legislative and Judicial Branches *of the state.* The punctuation should have been therefore that a comma

should be after the word 'State'. We therefore believe that the Legislative intent was that the word agency was intended to be applicable to any political subdivision of the state, including counties, cities, towns and villages, school, road, drainage, sewer, levee and other special purpose districts."

An Attorney General's opinion can be entitled to no more weight "than that given the opinion of any other competent attorney." *Gershman Investment Corporation v. Danforth,* 517 S.W.2d 33, l.c. 36 (Mo. banc 1974). We find Attorney General's Opinion No. 146 unpersuasive. It points out that Section 105.450, as set forth in RSMo Cum.Supp.1965, contained punctuation different from that which appeared in H.B. 422 as Truly Agreed To and Finally Passed. That punctuation has been corrected in the statute as it presently appears in RSMo 1969; but that correction does not help the Attorney General in the conclusion sought to be drawn in Opinion No. 146. As that Opinion itself acknowledges, the exception as so revised makes the law inapplicable to the legislative branches of political subdivisions.

Opinion No. 146 is entirely correct in demanding that the statute be read as passed by the legislature and not as revised by the reviser. *Protection Mutual Insurance Co. v. Kansas City,* 504 S.W.2d 127 (Mo.1974). So reading the statute, however, does not enable Opinion No. 146 to reach the result which it desires. In order to reach that result, the Opinion must and does go still further and says that even the punctuation adopted by the legislature was incorrect and did not accord with the true legislative intention. What Opinion No. 146 attempts to do is to rewrite the statute in accordance with the notions held by the then Attorney General's office as to what constituted good public policy. That it had no right to do, and we cannot give that Opinion any effect.

It should also be noted that if Section 105.495 were interpreted in the manner sought by Opinion No. 146, so as to disenable an Independence councilman from vot-

ing in the case of conflict of interest, then the statute as so interpreted would create a more onerous requirement than Section 53(3) of the code of ethics adopted by and made a part of the Independence City Charter. That interpretation of Opinion No. 146 would unnecessarily create a conflict between the statute and the charter. A contrary rule should be followed of attempting to construe the statute and charter so that they may exist together in harmony.

Stewart also errs in his attempted reliance upon *Smith v. City of Lee's Summit, supra.* In that case, Judge Howard, speaking for this court, expressed grave doubt whether a city council falls within the definition of the word "agency" as found in Section 105.450, and he went on to discuss the question of conflict of interest solely upon an *assumption* that the statute was applicable. In this respect the *Smith* opinion states:

"Both parties seem to assume that this statute is applicable. Therefore, in spite of the obviously serious question of its applicability, when the definition of the word 'agency', as found in section 105.-450, is read in conjunction with said section 105.495, we shall assume without deciding and for the purposes of this opinion only, that section 105.495 may be applicable."

That which the *Smith* opinion strongly hinted, we now hold expressly: the term "agency" as defined in Section 105.450, does not include (and instead excludes) a city's legislative body.

The motion for rehearing is overruled.