**Veronica BRADDY, Register,
Plaintiff-Appellant,**

v.

**Thomas E. ZYCH, et al.,
Defendants-Respondents.**

Nos. 49152, 49264.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1985.

Case Transferred to Supreme Court Aug. 7, 1985.

Case Retransferred to Court of Appeals Jan. 14, 1986.

Original Opinion Reinstated Jan. 16, 1986.

James Dailey Wahl, St. Louis, for Thomas E. Zych.

James J. Wilson, City Counselor, Francis M. Oates, Associate City Counselor, Julian Bush, Asst. City Counselor, St. Louis, for Veronica Braddy.

John Goffstein, Bartley, Goffstein, Bollato & Lange, Clayton, for other defendants-respondents.

SMITH, Presiding Judge.

These appeals involve the validity of two ordinances alleged to have been enacted by the Board of Aldermen of the City of St. Louis. The trial court by summary judgment in separate cases, upheld the validity of the ordinance in Number 49152 and held invalid the ordinance in 49264. The ordinances are unrelated and were enacted at different times. Each appeal presents a totally different legal issue. For reasons not clearly apparent we consolidated the appeals.

Plaintiff Braddy is the Register of the City of St. Louis whose obligation it is to file, number, and publish validly enacted ordinances of the City of St. Louis. She brings both actions for declaratory judgment to have declared her duty in regard to each bill. Defendant Zych is the President of the Board of Aldermen who has signed and certified each bill as having been duly enacted. Defendant Monti is the Secretary of the Firemen's Retirement System of the City and as such is responsible for implementing the ordinance which is the subject of Number 49152. He is not a party to Number 49264. We deal with the appeals separately. There are no factual matters in dispute, the only issues on the motions for summary judgment and before us present questions of law.

## NUMBER 49152

Board Bill Number 510 was passed by the Board of Aldermen, vetoed by the Mayor on February 7, 1984, and returned to the Board for reconsideration. On February 17, the bill was reconsidered with a result-

ing vote of 19 in favor, 6 against, 3 absent and 1 vacancy on the Board as a result of resignation. Defendant Zych certified that the bill had been passed over the veto of the Mayor. This determination was based on his opinion that the two-thirds requirement of the City Charter contemplated two-thirds of the actual in-office membership of the Board excluding therefrom any vacancies. The correctness of that opinion is the only issue before us. We find no Missouri cases which resolve the issue. In *State ex rel. Stewart v. King*, 562 S.W.2d 704 (Mo. App.1978) the parties agreed that in determining the requisite majority the number of councilmen to be considered should be reduced by one because of a death. The court made no determination of the correctness of that agreement. We are certainly not bound by the agreement of those parties in a different case.

The City of St. Louis is governed by a Charter. Art. IV, Section 1 provides that the Board of Aldermen shall be composed of a president elected at-large and twenty-eight members, one from each ward. Section 16 of that Article provides that no bill shall become an ordinance "unless a majority of all the members vote in favor of its adoption...." Section 17 deals with disapproval of an ordinance by the Mayor. In the situation existing when Board Bill 510 was vetoed the bill was returned to the Board for reconsideration. In that posture if "two-thirds of all the members vote to pass the bill" the bill becomes an ordinance. Sec. 26 provides that the Board may not sell any of the city's real estate "except by ordinance adopted by a vote of two-thirds of all the members."

The issue before us is whether the term "all the members" appearing in these Charter provisions refers to the full authorized membership of the Board or the actual membership of the Board at the time the vote is taken.[1]

The question has arisen in other jurisdictions with inconsistent results. See Anno-

tation, What constitutes requisite majority of members of municipal council voting on issue, 43 A.L.R.2d 698. *City of Alamo Heights v. Gerety*, 264 S.W.2d 778 (Tex. App.1954) is the leading case holding that "all the members" refers to the members actually in office. That case draws a distinction between the language "all the members" and "all the members elected" found in some statutes. In the latter situation, the court held, the addition of "elected" evidences an intention to provide an irreducible number of positions which constitutes the body. The absence of "elected" therefore indicated a reducible number. We entertain some question about the distinction attempted. Obviously, if a vacancy exists on a Board there is no member elected to that position. See also *State ex rel. Peterson v. Hoppe*, 194 Minn. 186, 260 N.W. 215 (1935).

On the other side of the issue are such cases as *State (Schermerhorn) v. Mayor of Jersey City*, 53 N.J.L. 112, 20 A. 829 (1890), and *Pollasky v. Schmid*, 128 Mich. 699, 87 N.W. 1030 (1901). The latter case presents a fact situation nearly identical to that before us. In summarizing its holding the court stated:

"It is admitted that, if 2 of the 34 aldermen had been temporarily absent, the ordinance would not have been passed. We cannot see how the fact that 2 of the 34 aldermen elected were permanently absent, instead of being temporarily so, would change the terms of the charter. The language is not ambiguous. The purpose, doubtless, was that, when legislation was proposed the wisdom of which was in so much doubt as to meet with the veto of the mayor, before it could become a law it should receive the vote of two-thirds of all the aldermen, when all the wards of the city were fully represented in the council." l.c. N.W. 1032.

■ Treating the language "all the members" as referring to the entire Board as

---

1. No party has asserted that "all the members" refers only to those so identified in Art. IV, Sec.

1. The president voted to override the veto.

defined in the Charter creates a predictability and definiteness in the requirements for the enaction of laws. It also gives substance to the charter scheme that representatives of sufficient wards to adequately represent the residents of the city support an enactment before it becomes binding on the City as a whole. Interpreting "all the members" to be less than the full board established by the Charter creates the possibility that legislation may be enacted which has support in less than the required number of wards. So also treating "all the members" as describing the full Board as constituted by the Charter insures that actions deemed important enough to require greater than majority approval, such as override of a veto or sale of city real estate, will not have less support than contemplated by the Charter. For these reasons we find the cases such as *Pollasky v. Schmid, supra,* more persuasive than the line of cases typified by *City of Alamo Heights v. Gerety, supra.*

We believe one other matter supports the conclusion that "all the members" encompasses the entire board as defined by the Charter. In 1965 Art. IV, Sec. 5 was amended to change the method of filling vacancies on the Board. The new section provided that "the Board of Aldermen by majority vote of *all of its remaining members* shall appoint a qualified person...." (Emphasis supplied). At the time of the enactment of that provision the other charter provisions heretofore discussed utilized the "all the members" language. The addition "of its remaining" demonstrates a belief of the Board which proposed the amendment and the people who passed it that "all the members" had a different meaning than "all of its remaining members." [2] In 1974 Section 5 was again amended to eliminate the authority of the

aldermen to fill a vacancy. The enactment of the 1965 amendment is evidence that the "all the members" language contemplated the full board of 29.

■ We therefore conclude that the trial court erred in sustaining the motion of defendants for summary judgment and in denying plaintiff's motion for summary judgment declaring the ordinance invalid.

## NUMBER 49264

Board Bill Number 128 was voted on by the Board of Aldermen on March 2, 1984. It received 14 affirmative votes, 9 negative votes, and one abstention. The parties in this case concede 15 votes (a majority of either 28 or 29 votes) was required for passage. Defendant contends that the one abstention is to be counted as having been cast with the affirmative votes thereby giving the requisite number for passage. He relies upon *Bonsack & Pearce, Inc. v. School District of Marceline,* 226 Mo.App. 1238, 49 S.W.2d 1085 (1932). The discussion by the court in that case would support a conclusion that it was applying the "common law rule" that because it is the duty of every member of a public body to vote for or against a proposition before the body, a failure to vote by one present will be interpreted as a vote with the majority. See also *Mullins v. Eveland,* 234 S.W.2d 639 (Mo.App.1950) [2–5]; *Northwestern Bell Telephone Company v. Board of Commissioners of the City of Fargo,* 211 N.W.2d 399 (N.D.1973). Careful reading of *Bonsack & Pearce* indicates that the court in reality held that the President of the Board (who abstained from voting) in declaring the motion to have passed and in signing the contract approved by the motion, in fact voted for the motion.

---

**2.** In *City of Nevada v. Slemmons,* 244 Iowa 1068, 59 N.W.2d 793 (1953) the Court held that a requirement of a "majority vote of the whole number of members" to select a successor for a vacancy referred to a majority of the remaining members. In distinguishing *State v. Mayor of Jersey City, supra,* the court stated:

"The decision, however, refers to a quorum vote on a proposed ordinance and does not

differ from what our own conclusion would be on a question addressed to a legislative action by the council as distinguished from the election of a member to fill a vacancy." The language of the Iowa statute contained different language on the vote for legislative enactments and the filling of a vacancy.

Regardless, the doctrine applied in *Bonsack & Pearce* and *Mullins v. Eveland* does not apply if a statute governs the voting requirements. *State ex rel. Stewart v. King, supra,* [1]; *Robinson v. City of Raytown,* 606 S.W.2d 460 (Mo.App. 1980) [1]. In those cases the operative statute required a three-fourths favorable vote of all the councilmen. The "favorable" vote requirement was held to contemplate only the affirmative votes cast and precluded counting votes constructively, but not actually, cast. In short, an abstention is not a favorable vote. The Board of Aldermen of St. Louis operates under the Charter. Its provisions mandate the votes required to validly enact an ordinance. Article IV, Sec. 16 provides that "no bill shall become an ordinance unless a majority of all the members vote *in favor* of its adoption...." (Emphasis supplied). The "vote in favor" language is clearly comparable to the "favorable vote" language of the statute in the *Stewart* case. Such language requires that a majority of the members vote favorably for the bill. An abstention is not a favorable vote. The bill received only fourteen votes, less than the majority required by the Charter and was not validly enacted. The trial court correctly entered a summary judgment in favor of plaintiff declaring that the ordinance was not validly enacted.

Judgment in Number 49152 is reversed and remanded with directions to grant plaintiff's motion for summary judgment declaring that the ordinance was not validly enacted.

Judgment in Number 49264 is affirmed.

SNYDER and SATZ, JJ., concur.