IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1921.

T. F. WHITEHEAD *et al.* *v.* T. C. CLARK *et al.*

(*Knoxville.* September Term, 1922.)

1. COUNTIES. Member of quarterly court removing from district not entitled to vote for road improvement bond issue.

A justice of the peace who has removed from the district in which he was elected has vacated his office under the provision of Constitution, article 6, section 15, Shannon's Code, section 433, and section 1118, subsec. 3, and is therefore not entitled as a member of a county quarterly court to vote for a road improvement bond issue. (*Post, p.* 670.)

Acts cited and construed: Chs. 78, 79 (1921).

Cases cited and approved: Grainger County v. State, 111 Tenn., 234; State ex rel. v. Leonard, 86 Tenn., 485; Ledgerwood v. Pitts, 122 Tenn., 606; State ex rel. v. Maloney, 92 Tenn., 86.

Case cited and distinguished: Ashcroft v. Goodman, 139 Tenn., 629.

Codes cited and construed: Secs. 433, 1118, subsec. 3 (S.).

Constitution cited and construed: Art. 6, secs. 7, 15.

660

2. JUDGES. County judge a ''judge of inferior court'' within Constitution, and cannot hold other office.

The judge of a county court is a judge of one of the inferior courts referred to in Constitution, article 6, section, 7, which expressly provides that such judges shall not hold any office of trust or profit under the State or the United States. (*Post, pp.* 671-673.)

3. COUNTIES. Justice of the peace appointed county judge loses right to vote in quarterly court on bond issue; ''office;'' ''office of trust.''

The office of justice of the peace is an office of trust within Constituition, article 6, section 7, prohibiting judges of inferior offices from holding any office of trust or profit, and hence a justice of the peace appointed county judge, and assuming the office, cannot vote for a road improvement bond issue in the county quarterly courts; an "office" consisting in a right, and correspondent duty, to exercise a public trust, and to take the emoluments belonging to it (quoting Words and Phrases, First Series, Office). (*Post, pp.* 671-673.)

Cases cited and approved: Redistricting Cases, 111 Tenn., 234; Wright v. Cunningham, 115 Tenn., 466.

Code cited and construed: Sec. 6963 (S.).

Constitution cited and construed: Sec. 26, art. 2.

4. COUNTIES. Pike commissioner held not disqualified from voting for road improvement bond issue as member of quarterly court.

A member of a county quarterly court was entitled to vote for a road improvement bond issue authorized by Private Acts 1921, chapter 78, notwithstanding he was one of the pike commissioners named in the act to have charge of the construction of the road; the position of pike commissioner not being an office within the constitutional or statutory meaning of the term. (*Post, pp.* 673, 674.)

Cases cited and approved: R. J. Fisher v. W. P. Wilson, Sept., 1911; Todtenhausen v. Knox County, 132 Tenn., 170.

5. COUNTIES. Sale of road improvement bonds held not invalidated by breach of duty by commissioners as to interest.

Under Private Acts 1921, chapter 78, empowering the quarterly court to vote for a road improvement bond issue, and imposing on the commissioners the duty to deposit the funds in solvent banks at the best obtainable rate of interest, an agreement by the pike commissioners under the act to deposit the funds from the sale of bonds without interest to the county does not render the sale void. (*Post, pp.* 674, 675.)

FROM GRAINGER.

Appeal from the Chancery Court of Grainger County. —Hon. M. H. Gamble, Chancellor.

Phillips & Hale, for T. F. Whitehead and others.

W. N. Hickey and A. T. Drinnon, for county judge and pike commissioners.

William Hume, for Caldwell & Co.

Mitchell Long, for I. G. Tigrett & Co.

Mr. Justice Hall delivered the opinion of the Court.

The complainants filed this bill as citizens and taxpayers of Grainger county, for the purpose of enjoining the pike commissioners for said county from making a sale of certain road improvement bonds which the county had issued under authority of chapter 78, Private Acts of 1921.

By section 1 of said act it is provided that Grainger county, by and through its quarterly court, at any regular or called session, a quorum of the justices of the peace be-

ing present and a majority of the court voting therefor, is authorized and empowered to issue interest-bearing coupon bonds for said county to the amount of $200,000, the proceeds arising from a sale thereof to be used in constructing and macadamizing roads in said county.

It is provided by section 5 of said act that, for the purpose of carrying out the provisions of said act, S. H. Roach, W. G. Corum, and W. J. Hopoon shall constitute the commissioners who shall have charge of the work of constructing the roads of said county to be designated by its quarterly court. Said section further provides that before entering upon their duties said commissioners shall enter into joint bond in such penalty as may be fixed by the county court, payable to the State of Tennessee for the use of Grainger county, conditioned to well and truly account for all moneys coming into their hands from the sale of said bonds, and to faithfully and impartially perform their duties, and that they shall also take and subscribe to an oath that they will faithfully and impartially discharge their duties as such commissioners.

Said section further provides that the bond executed by them shall be made by some reputable guaranty company, authorized to do business in the State of Tennessee, and shall be approved by the judge or chairman and the clerk of the county court, and shall be spread on the minutes of the court.

Section 6 provides that, when said commissioners shall have given bond and qualified, said bonds shall be delivered to them for sale, and their receipt taken for the same, which shall be spread on the minutes of the court; that said commissioners shall proceed to sell said bonds by advertising the same for sale in one or more newspapers for

at least fifteen days, and otherwise as they may deem proper, for sealed bids, and they shall sell said bonds to the highest bidder complying with the terms of sale; provided, however, that same shall not be sold for less than par and accrued interest; that if no satisfactory bid is received by said commissioners they shall have the right to reject any and all bids, and readvertise said bonds for sale, or sell them at private sale, as they may deem best for the interest of the county. The funds arising from the sale of said bonds shall be deposited by said commissioners in good and solvent banks at the best rate of interest obtainable.

Soon after the passage of this act, to wit May 18, 1921, a special session of the quarterly court of Grainger county was held for the purpose of voting upon the question of issuing the bonds provided for and authorized by said act. By resolution introduced, and declared by the presiding judge to have been carried, the bonds were authorized to be issued, and thereafter the commissioners named in said act proceeded to advertise said bonds.

The bill alleges that the resolution authorizing the issuance of said bonds was not legally adopted for the reasons hereinafter set out, and that therefore the commissioners could not make a valid sale of said bonds.

The bill alleges that, at the time the quarterly court was called to convene for the purpose of considering and voting on the question of issuing the bonds authorized by said act, it was entitled, by statute, to fifteen justices of the peace, but that there were, in fact, only twelve justices constituting the court, and eligible to vote on said resolution at the time it was offered and attempted to be adopted by the court.

Whitehead v. Clark.

The bill alleges that the resolution so introduced, upon being put upon its passage, was declared by the presiding judge to have received nine votes for its passage and five votes against its passage, with one justice present and not voting; that there were present and recognized by the presiding judge as entitled to vote upon the passage of said resolution, and each of whom voted for its passage, Earl West, defendant T. C. Clark, and defendant. S. H. Roach, and, deducting from the votes cast these three votes, which were illegal, and should not have been counted, said resolution did not pass, and therefore all action taken by defendants subsequent to said meeting of the court, looking to the issuance and sale of said bonds, was illegal and void.

With respect to Earl West, the bill alleged that at the regular August election next preceding the meeting of the quarterly court at which it was attempted to pass said resolution he had been elected to the office of justice of the peace for Grainger county, but that at the time he attended and participated in said meeting and voted for the passage of said resolution he had removed from Grainger county, and resided in the county of Jefferson, thus vacating his office, and was not, therefore, entitled to vote on the passage of said resolution.

With respect of the defendant Clark, the bill alleges that he was, at the time he voted for said resolution, the regular judge of the county court of Grainger county, having been appointed by the Governor pursuant to the provisions of chapter 79, Private Acts of 1921, which act was passed and approved on the same date as chapter 78 of said acts, authorizing Grainger county to issue the bonds. in question, which office said Clark accepted prior to said meeting, had duly qualified, and was holding the same at

the time of said meeting. The bill further alleges that, under the provisions of article 6, section 7, of the State constitution, when Clark accepted the office of county judge of Grainger county, his office of justice of the peace of said county, which office he had theretofore held, became vacated, and he was no longer entitled to serve as justice of the peace, or vote upon the passage of said resolution.

With respect to said Roach, the bill alleges that, at the time of the passage of chapter 78, Acts of 1921, he was one of the justices of the peace of Grainger county, but was named in said act as one of the commissioners to have charge of the sale of said bonds and the expenditure of the fund derived therefrom, which position he had accepted prior to voting upon the passage of said resolution, and had qualified as required by said act; that said office of pike commissioner so created by said act is incompatible with the office of justice of the peace of said county, since, under said enabling act, the pike commissioners are required to make their reports to and settlements with the quarterly court of Grainger county, and the said court is vested with the right and power of removal of any and all of said commissioners for any misconduct in office, on ten days' written notice; therefore the said Roach, having, prior to participating in said meeting of the quarterly court, and voting on the passage of said resolution, accepted the incompatible office of pike commissioner, his office of justice of the peace thereby became vacated, and he was not entitled to vote upon said resolution.

The bill alleges that, eliminating the three illegal votes cast for said resolution by the three parties who were not justices of the peace of said county, and were not entitled to vote upon the passage of said resolution, there were

present and participating in the deliberations of the court at the time said resolution was declared to have been adopted only twelve justices, six of whom voted for the passage of said resolution, five of whom voted against its passage, and one of whom, though present, did not vote at all; that this vote shows that said resolution did not receive a majority of the votes of the members of said court as then legally constituted, and therefore was not legally passed, and that all proceedings had by defendants thereafter looking to the issuance and sale of said bonds were illegal and void.

The bill further alleges that the said enabling act provides that the bonds authorized to be issued thereunder shall, upon their issuance, be delivered to defendants pike commissioners, who shall proceed to sell the same, after due advertisement, upon competitive bidding, provided, however, that same shall not be sold for less than par and accrued interest, and provided, further, that the funds arising from the sale of said bonds shall be deposited by said commissioners in good and solvent banks, at the best rate of interest obtainable; that the commissioners did advertise said bonds for sale in accordance with the provisions of said act, but, failing to receive a satisfactory bid, entered upon negotiations with bond buyers for the sale of same at private biddings (which they were authorized to do under said act), and, as a result of these private negotiations, had sold said bonds to defendants, Caldwell & Co., upon terms violative of the provisions of said act.

Later, on October 25, 1921, an amended bill was filed, making I. G. Tigrett & Co. defendants thereto, in which it was alleged that complainants were mistaken in the allegation of their original bill that said bonds had been sold

to Caldwell & Co., but had been sold to I. G. Tigrett & Co. upon the following terms: At par and accrued interest to date of delivery of said bonds, the proceeds thereof to be deposited in banks to be selected by said I. G. Tigrett & Co., without interest to the commissioners of Grainger county, and to be thus kept on deposit and withdrawn only by the commissioners as the funds are needed and used in the construction of the roads to be built—that this contract of sale was made by said commissioners with I. G. Tigrett & Co. because they were unable to sell said bonds for par and accrued interest, and for the purpose of evading the provisions of the act prohibiting them from selling them at less than par. The amended bill further alleges that the commissioners, in making the sale to Tigrett & Co. upon these terms, well knew that they were, in fact, making the sale at a figure which was at least $10,000, and perhaps $25,000, below par and accrued interest, for the reason that, on the money to be derived from the sale of said bonds, if paid over to the commissioners, as was required to be done by the act, and deposited at interest by them in solvent banks, as provided by section 6 of said act, from $10,000 to $25,000 interest would have accrued and been received by the commissioners on the fund derived from the sale of said bonds during the course of the expenditure thereof.

To both the original and amended bills all of said defendants demurred. These demurrers were sustained by the chancellor, and both the original and amended bills were dismissed; the chancellor being of the opinion that West and defendant Clark, county judge, were not entitled to vote upon the passage of the resolution providing for the issuance of said bonds for the reasons stated in the original

Whitehead v. Clark.

bill, but that Roach, the pike commissioner, was entitled to vote on said resolution, and that the same was therefore legally adopted. He also held that complainants were not entitled to recover of the defendants pike commissioners and I. G. Tigrett & Co., for the use of Grainger county, interest which should have been realized on the fund derived from the sale of said bonds if it had been deposited at interest by the commissioners in some solvent bank, as required by section 6 of said act, which relief was sought alternatively in both the original and amended bills.

From this decree complainants have appealed, and have assigned errors.

The first question presented by the assignments of error is whether or not the resolution attempted to be adopted by the quarterly court of the county at the special term of said court held on May 18, 1921, was legally adopted by said court.

Our constitution (article 6, section 15) provides that, upon the removal of a justice of the peace from the district in which he was elected, his office shall become vacant from the time of such removal.

By section 433 of Shannon's Code it is provided: "Justices of the peace shall vacate their offices by removing from the districts in which they were elected; and a justice shall be liable to a penalty of fifty dollars for acting officially after such removal, to be recovered by any one suing for the same, before any justice of the county in which the offender resides."

Subsection 3 of section 1118 of Shannon's Code provides: "Any office in this State is vacated [by the incumbent]: . . . .

"(3)   By ceasing to be a resident of the State, or of the district, circuit, or county for which he was elected or appointed."

In *Ashcroft* v. *Goodman*, 139 Tenn., 629, 202 S. W., 940, it is said: "A vacancy in office, for any of the causes enumerated in the statutes, occurs usually at the time of the happening of the event whose occurrence is by the statute the cause of the vacancy, and no judicial determination that a vacancy has occurred is necessary."

To the same effect is the holding of this court in *Grainger County* v. *State*, 111 Tenn., 234, 80 S. W., 750.

We are of the opinion, therefore, that West had vacated his office, and was not a justice of the peace of Grainger county at the time he voted for the resolution in question, and therefore was not legally entitled to vote for said resolution.

It is next the insistence of complainants that Clark, by the acceptance of the office of county judge, vacated the office of justice of the peace, and therefore was not entitled to vote upon the passage of said resolution.

It is expressly provided by section 7, article 6, of the constitution that—"Judges of the supreme or inferior courts . . . shall not be allowed any fees or perquisites of office nor hold any office of trust or profit under this State or the United States."

County judges have been repeatedly held to be judges of "inferior courts" in the sense the term is used in the constitution. It was so held in *State ex rel.* v. *Leonard*, 86 Tenn., 485, 7 S. W., 453; *Ledgerwood* v. *Pitts*, 122 Tenn., 606, 125 S. W., 1036; *State ex rel.* v. *Maloney*, 92 Tenn., 68, 20 S. W., 419.

It must be held, therefore, that Judge Clark is a judge of one of the inferior courts referred to in section 7, art. 6, of the constitution, which expressly provides that such judges shr˙ l not "hold any office of trust or profit under this State ꞏ the United States." The question is, therefore, whethei or not the office of justice of the peace is an office of trust or profit within the meaning of this clause of the constitution.

It is expressly provided by section 26, article 2, of the constitution ꞏthat the office of justice of the peace is not to be considered a lucrative office. The question, therefore, remains whether the office of justice of the peace is an office of trust within the meaning of section 7, article 6, of the constitution.

In 29 Cyc., p. 1361 et seq., an office is defined to be: "A duty, charge or trust; a place of trust; a position to which certain duties are attached; a right and correspondent duty to execute a public or private trust and to take the emoluments belonging to it," etc.

In 6 Words and Phrases, p. 4922, an office is defined to be: "An office consists in a right, and correspondent duty, to exercise a public trust and to take the emoluments belonging to it"—citing Judge Kent and a large number of cases.

ꞏIn 16 ꞌRuling Case Law, p. 330, section 2, it is said that in most, if not all, the States the office of justice of the peace is now provided for by the constitution and general laws of the State. It is connected with the judicial department of the State government, and a justice of the peace is, to a certain extent, a judicial officer, as many of his powers and duties are of a judicial nature, and concern the administration of justice. The office is of great

importance to the people at large, as it opens the door of justice near their homes, and not only affords a cheap and speedy remedy for minor grievances as to the rights of property, but also renders substantial aid in the prevention and punishment of crime.

Justices of the peace perform judicial and political functions; judicial in holding court and deciding matters of litigation arising between parties; political as members of the county court, which is the governing agency or legislative body of the county. They are county officers in the sense that their jurisdiction is coextensive with the county. *Redistricting Cases,* 111 Tenn., 234, 80 S. W., 750 et seq.; *Wright v. Cunningham,* 115 Tenn., 466, 91 S. W., 293.

As members of the quarterly court they are charged with the duty of imposing taxes for county purposes, and providing for the collection thereof; they are conferred with power to elect certain county officials; they make appropriations of money for public purposes from the county treasury; they are intrusted with the establishment and supervision of local improvements, with power to appoint commissioners over turnpikes, toll-bridges, and other public improvements, and to fill vacancies that may occur among the commissioners, with power to erect or control and dispose of public county buildings, and with power to employ a competent person to superintend the construction and repair of such county buildings.

Justices of the peace, in the exercise of their judicial powers, may assess fines in certain cases coming before them, and it is made their duty to collect such fines and report them to the proper authority. They are also required to execute a bond, conditioned to pay to the trustee

of the county every fine received or collected, or which might have been received or collected by them. Shannon's Code, section 6963.

We are of the opinion, therefore, that the office of justice of the peace · is an office of trust in the sense which that term is used in section 7, article 6, of the constitution.

But it is said that a contrary view was taken by this court in *Re Duff*, 3 Shan. Cas., 721. The only question involved in that case was whether the office· of justice of the peace was a lucrative office under section 26, article 2, of the constitution, which forbids any person in this State to hold more than one lucrative office at the same time.

It follows that it must be held that Judge Clark, upon assuming the office of county judge, vacated the office of justice of the peace, and was not, therefore, entitled to vote on the passage of said resolution.

We think the right.of defendant Roach to vote on the passage of said resolution, notwithstanding at the time he did so he was one of the pike commissioners named in the act, cannot be doubted. The position of pike commissioner is not an office within either the constitutional or statutory meaning of that term.

In *R. J. Fisher* v. *W. P. Wilson* (memorandum opinion), decided by this court at its September term, 1911, it was expressly held that pike commissioners are not county officers in the constitutional sense of the term; that the duties of such commissioners are not permanent, but are generally constituted merely to superintend the issuance of a bond issue, and to superintend the expenditure of the proceeds of such issue; that they are not authorized to exercise any political or governmental county

functions, and the employment is temporary and for a single object.

To the same effect is the holding of the court in *Todtenhausen* v. *Knox County,* 132 Tenn., 170, 177 S. W., 487.

It results, therefore, that we are of the opinion that Roach, by accepting the office of pike commissioner, did not vacate the office of justice of the peace, and was therefore entitled to vote on said resolution. This being true, it follows that said resolution received a majority of the votes of the members of the quarterly court of Grainger county as legally constituted at the time of its passage, and it must be held that said resolution was legally and validly passed, and the issuance of said bonds was duly authorized.

The next question presented by the assignments of error is whether or not the sale by the pike commissioners to Tigrett & Co., under the terms and conditions alleged in the amended bill, was a legal and valid sale, and, if not a legal and valid sale, have complainants the right, as taxpayers, to have the same enjoined? Also whether the complainants, as taxpayers of Grainger county, without first having made demand of Grainger county, have the right to sue for any interest which the county may have lost by reason of the commissioners' failure to deposit the fund derived from the sale of said bonds in solvent banks at the best rate of interest obtainable?

According to the bill, the bonds were sold by the pike commissioners to Tigrett & Co. for par and accrued interest, as required by the act. The agreement alleged to have been made by the commissioners with Tigrett & Co. to deposit the fund derived from the sale in banks of Tigrett & Co.'s selection, without interest to the county,

did not render the sale void.  The duty imposed on the commissioners by the act to deposit the fund in solvent banks, at the best rate of interest obtainable, was one to be performed by them subsequent to the sale, and its breach could not affect the validity of the sale.  If the county should eventually sustain a loss by reason of such a breach on the part of the commissioners, the right of action for such breach, if any, would lie primarily in the county.  It does not appear that the county has as yet lost anything by reason of said agreement.

The decree of the chancellor is therefore affirmed, with costs.