Tom Beckler *et al.* v. State of Tennessee *ex rel.*

(*Knoxville,* September Term (May Session) 1954.)

Opinion filed June 10, 1955.

John C. Prince, of Benton, Frank N. Bratton, of Athens, for appellant.

Charles S. Mayfield, of Cleveland, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

A statute applicable to Polk County provides that its County Road Superintendent shall be elected by its Quarterly Court. The number of Justices authorized for membership on that Court is ten. One of those ten died on July 5, 1954, thereby reducing its then actual membership to nine. On July 19, 1954 that body of nine actual members purported to elect A. W. Gregory, appellee here, its Superintendent of Roads. Five members of that Court voted for him, and he assumed the office for the balance of the term ending in July, 1955.

In January of 1955 that same Quarterly Court purported to elect appellant, Tom Beckler, its Road Superintendent, seven votes being cast for him. The theory upon which that body proceeded to this election was that Gregory was not legally elected in July, 1954. This theory is based upon the construction which this January, 1955 Quarterly Court and Beckler place upon Section 10218 of the Code Supplement reading as follows:

"A majority of all the justices constituting the quarterly county court, and not merely a majority

of the quorum, shall be required to elect county officials required by law to be elected by the quarterly county court * * *.''

The question presented by the pleadings and proceedings for decision was whether this code section, when properly construed, requires a majority of all the number authorized in the make-up of 'the Polk County Quarterly Court as a condition precedent to a valid election, as insisted by Beckler, or does that code section, when properly construed, mean a majority of all the members in existence at the time of the purported election, as insisted by Gregory?

The Chancellor upheld the insistence of Gregory on the authority of *Whitehead* v. *Clark,* 146 Tenn. 660, 244 S. W. 479. Beckler has appealed and supports his insistence principally by decisions in *McLean* v. *City of East St. Louis,* 1860, 222 Ill. 510, 78 N. E. 815; *State* v. *Mayor, etc., of Jersey City,* 1890, 53 N. J. L. 112, 20 A. 829; *Pollasky* v. *Schmid,* 1901, 128 Mich. 699, 87 N. W. 1030, 55 L. R. A. 614.

The material language of the McLean case, supra, is that it requires ''the concurrence of a majority of all the members *elected* * * *.'' The pertinent language of the Pollasky case, supra [128 Mich. 699, 87 N. W. 1031], is that '' '* * * two thirds of all the members *elected* * * * shall be necessary * * *.' '' (Emphasis supplied.) The pertinent language of *State* v. *Mayor,* supra, is ''three-fourths of all the members of said legislative body''. That case clearly supports the insistence of Beckler.

The question stated is dealt with directly or indirectly in text form with appropriate citations in 62 C. J. S., Municipal Corporations, Secs. 399, 404, page 759, and again at pages 765, 767, and in 37 American Jurisprudence, pages 674 and 762. There is an annotation of the

question in 2 A. L. R. 1593 et seq. These authorities reflect the fact, we think, that the courts of sister States are not in agreement as to how this question should be decided.

The North Carolina case of *Commissioners* v. *Wachovia Loan & Trust Company,* 143 N. C. 110, 55 S. E. 442, 443, 118 Am. St. Rep. 791 comes nearer to being on all fours with the case at bar than any other decision of a sister jurisdiction that we have been able to find. In that case the charter authorized the city commissioners to borrow money " 'only after they have passed an ordinance by a three-fourths vote of the entire board at two separate regular meetings.' " One commissioner had resigned, and at the time of the second passage only five members were present, all voting for the passage of said ordinance. The insistence made against the validity of the ordinance was "that the entire number is seven, and five is not three-fourths of seven". It is three-fourths of six, however.

The Court, considering the wording of the ordinance, to-wit, "three-fourths of the entire board" then said this: "* * * the fact that the word 'elected' was omitted after the word 'board' is indicative to us that the Legislature intended that three-fourths of the entire membership of the board in existence at the passage of the ordinance should have power to pass such an ordinance." It then concluded as follows: "We are of opinion, therefore, in this case that the words 'entire board' mean all the members of the board in existence, and not all those originally elected." Several decisions of other states supporting this construction were cited.

If, as held by the North Carolina Court, the expression "three-fourths of the entire board" means three-fourths of the members in existence at the time of the passage of

the ordinance, then certainly the expression in our statute, to-wit, ''all the justices constituting the quarterly county court'' means not more than all the justices in existence at the time the Court holds the election.

Turning now to our own case of *Whitehead* v. *Clark,* 146 Tenn. 660, 244 S. W. 479, 483, the decision shows that Grainger County in the make-up of its Quarterly Court was entitled to fifteen justices at the time it purported to authorize the issuance of certain road bonds. Their issuance required the affirmative vote of a majority of the members of the Quarterly Court. At the session in question nine alleged justices voted for the issuance of these bonds. Two of them, however, had vacated their office. Thus it was that the actual membership of the Court at the time of this vote was thirteen and seven legal votes were cast in favor of the issuance of the bonds. Seven is not a majority of fifteen, the number of justices authorized. It is a majority of thirteen, the actual membership at the time in question.

The holding in the case was that the ''resolution received a majority of the votes of the members of the quarterly court of Grainger county *as legally constituted at the time of its passage,* and it must be held that said resolution was legally and validly passed, and the issuance of said bonds was duly authorized.'' (Emphasis supplied.)

■ It is not possible to construe Code Section 10218 as meaning only a majority of all the justices authorized for membership on the Polk County Court, rather than the actual existing number, without overruling the principle, as well as the actual holding, of *Whitehead* v. *Clark,* supra. We do not think the language of this code section would justify such action upon our part. This decision had been in existence for a number of years at

the time of the enactment of Section 10218 of the Code Supplement. Had the Legislature intended for the expression ''all the justices constituting the quarterly county court'' to have a meaning different from that necessarily given it by the holding in *Whitehead* v. *Clark,* supra, it would certainly have been easy enough to have used appropriate language so showing.

A rather plausible argument made in behalf of Beckler is that the construction we give this code section could result in one member of the Quarterly Court being able to run all the affairs of that Court if the other nine members died or vacated their office. In addition to the fact that such a situation cannot reasonably be contemplated, the fact is (and counsel will, no doubt, so agree) that the Court's function is limited in the premises of this case to an ascertainment of the intention of the legislature as determined by the language used, and in the light of precedent.

The decree of the Chancellor adjudging Gregory to be entitled to the office is affirmed, with costs adjudged against appellants and their sureties.

ROBERT S. CLEMENT, Special Justice, did not participate in the consideration of this case.