**MID-AMERICA CABLE CORPORATION,**
Plaintiff-Appellee,

v.

**The METROPOLITAN GOVERNMENT OF NASHVILLE and Davidson County, Tennessee, et al., Defendants.**

Court of Appeals of Tennessee,
Middle Section.

Dec. 29, 1972.

Certiorari Denied by Supreme Court
Aug. 20, 1973.

On August 2, 1971, the Honorable Beverly Briley, Mayor of Metropolitan Government of Nashville and Davidson County, Tennessee, vetoed an ordinance designated as substitute ordinance No. 71–1404 which purported to grant a franchise to plaintiff-appellee, Mid-America Cable Corporation, its successors and assigns, to construct, operate and maintain a cable communication system in the Metropolitan area of the Metropolitan Government of Nashville and Davidson County, Tennessee, to which we will hereinafter refer as "Metro."

In his veto message to the council, the Mayor set forth his reasons for refusing to approve the ordinance.

On August 3, 1971, the Metro council met in regular session, at which time the Mayor's veto message was considered and at which meeting Councilman David Scobey presided as President pro tem of the council.

A motion was made and duly seconded to pass said ordinance No. 71–1404 over the Mayor's veto and of the thirty-eight members present, twenty-six voted "Aye" and twelve voted "No". Based upon this vote the President pro tem ruled that the motion to override the Mayor's veto failed.

As a result of this ruling by the President pro tem of the council, the plaintiff herein, Mid-America Cable Corporation, filed this suit for a declaratory judgment, averring in its complaint that said ordinance was legally enacted and praying that "the Court declare and order that said ordinance was properly passed and that the Mayor's veto was overridden by two-thirds (⅔rds) majority to which the council was entitled on the date of the vote thereon." (Tech. Rec. p. 9).

Metro filed an answer denying that said ordinance had been passed over the Mayor's veto and the Metropolitan Nashville Educational Association, by leave of the Court, was allowed to intervene and become a party defendant to this proceeding.

Wilson West, Nashville, for plaintiff-appellee.

Milton Sitton, Nashville, for Metropolitan Government of Nashville and Davidson County.

Charles H. Warfield, Nashville, for defendant-appellee, Metropolitan Nashville Education Assn.

## OPINION

PURYEAR, Judge.

This is a declaratory judgment suit involving the question of whether or not a certain ordinance of the Metropolitan Government of Nashville and Davidson County, Tennessee, designated as substitute ordinance No. 71–1404, was lawfully enacted.

Upon becoming a party defendant hereto, Metropolitan Nashville Educational Association adopted the answer of Metro.

On the 18th day of September, 1971, the case was heard by the trial Court upon the technical record, which includes a certified copy of the disputed ordinance, copies of pertinent charter provisions of the Metro charter, copies of certain letters relative to the disputed ordinance and copies of various minutes of sessions of the Metro Council.

All of the foregoing were considered by the trial Court as evidence in the case and as a result of consideration thereof the trial Court made the following findings of fact:

"That the ordinance in question, being Ordinance No. 71–1404, was duly and properly passed by the Council of the Metropolitan Government of Nashville and Davidson County, Tennessee, as reflected by the minute entries of said council shown in the exhibits, and that the same was vetoed by the Mayor and subsequently voted on by the Council on motion to pass the bill, notwithstanding the Mayor's veto, was reflected by the minutes of said Council for Tuesday, August 3rd, 1971.

That the Charter of the Metropolitan Government provides for a total of forty (40) members and that on July 1st, 1971, a vacancy occurred due to the resignation of Honorable A. M. Carney by letter of resignation dated June 28, 1971, addressed to the members of the Metropolitan Council and the chairman thereof, and which was received by said Council on July 6, 1971, as reflected by the minute *entrie* of said Council.

That by Sec. 5.04 of the Charter of the Metropolitan Government, a vetoed ordinance 'shall become effective when subsequent to its return it shall be adopted by two-thirds (⅔rds) of all the members to which the Council is entitled.' The Court interprets the above quoted language to mean two-thirds of all the members to which the Council is entitled at the time of the vote and the Court so finds. The Court further finds and holds that at the time of the vote on August 3, 1971, the Council was entitled to only thirty-nine (39) members due to the resignation of the Honorable A. M. Carney effective July 1, 1971.

The Court further finds that the vote on August 3, 1971, showed twenty-six (26) votes for passage of the bill, notwithstanding the Mayor's veto, which constitutes two-thirds of all the members to which the Council was entitled on said date.

That said ordinance was properly passed and that the Mayor's veto was *overriden* by the two-thirds majority to which the Council was entitled on the date of the vote thereon." (Tech. Rec. pp. 105, 106)

As a result of these findings of fact the trial Court ordered and adjudged that substitute ordinance No. 71–1404 was a legal and binding obligation upon the defendant, Metro, and that when the plaintiff complies with the terms of said ordinance, said plaintiff is legally granted a franchise to operate and maintain a cable television service as contained in said ordinance.

From said judgment the defendants first appealed to the Supreme Court and by order of that Court, entered on August 17, 1972, the case was transferred to this Court.

Defendants have filed three assignments of error which raise the following two questions:

(1) Was it error for the trial Court to hold that the Metro Council could legally pass the disputed ordinance without first referring the matter to the Metropolitan Planning Commission before taking final action upon the ordinance? (Assignments one and three)

(2) Was it error for the trial Court to hold that the ordinance was passed over

the Mayor's veto by two-thirds of all of the members to which the Council is entitled as provided by Section 5.04 of the Metropolitan Charter? (Assignment number two).

We have concluded that it is only necessary for us to consider the second question in order to dispose of this appeal and, therefore, we will pretermit the first question.

The evidence in the case is undisputed and the only portion of it which needs to be mentioned in this opinion for the purpose of disposing of the determinative question in this case is as follows:

It is averred in the complaint and admitted in the answer that Section 3.01 of the Metropolitan Charter fixes the total authorized membership of the Metropolitan Council as follows:

"The legislative authority of the metropolitan government of Nashville and Davidson County, except as otherwise specifically provided in this Charter, shall be vested in the metropolitan county council, sometimes hereinafter called 'Council', which shall have a total membership of forty (40), including five (5) councilmen-at-large, and thirty-five (35) district councilmen." (Tech. Rec. p. 6)

From the foregoing Section of the Charter it will be seen that the Metropolitan Council is entitled to a total of forty members.

It is also averred in the complaint and admitted in the answer that Section 5.04 of the Metropolitan Charter makes provision for passing resolutions and ordinances over the Mayor's veto in the following language:

"Any resolution or ordinance so disapproved shall become effective when subsequent to its return it shall be adopted by two-thirds (⅔rds) of all the members to which the council is entitled, with the ayes and noes and the names of the councilmen voting for and against the same entered on the minutes." (Tech. Rec. p. 6)

On June 28, 1971, Mr. A. M. Carney, a member of the council, resigned and his resignation took effect on July 1, 1971.

At its regular meeting on July 20, 1971, substitute ordinance No. 71–1404 was adopted by the council on third and final reading and sent to the Mayor, Honorable Beverly Briley. The Mayor declined to approve said ordinance and he returned it to the council with a veto message at some time subsequent to July 20, 1971, and prior to August 3, 1971, on which latter date the council met in regular session, with Mr. David Scobey, President pro tem, presiding, at which time thirty-eight councilmen were present and one absent, there being only thirty-nine members of the council at that time, since Mr. Carney had resigned and the vacancy had not been filled.

At this meeting on August 3, 1971, a motion was made to adopt substitute ordinance 71–1404 notwithstanding the Mayor's veto and upon roll call on that motion, twenty-six members of the council voted "Aye" and twelve voted "No", whereupon the President pro tem of the council ruled that the motion to adopt the ordinance over the Mayor's veto failed.

The precise question presented by the second assignment is whether or not the ordinance in question was adopted and enacted over the Mayor's veto pursuant to Section 5.04 of the Metropolitan Charter.

Plaintiff insists that the council consisted of and was *"entitled"* to only thirty-nine members on August 3, 1971, and since twenty-six members voted to override the Mayor's veto, this complies with requirements of Section 5.04 of the Charter and that the ordinance was legally adopted.

Defendants insist that the counsel was "entitled" to forty members on August 3, 1971, and since only twenty-six members voted to override the Mayor's veto, the motion to enact the ordinance over the veto failed because less than two-thirds of

the authorized membership of forty councilmen voted in favor of the motion.

This question necessarily entails a construction of the language *"two-thirds (⅔rds) of all the members to which the council is entitled"*.

A similar question over the enactment of a resolution by a county court was considered by this Court in Bailey v. Greer (1971), Tenn.App., 468 S.W.2d 327, but that case is distinguishable from the case at bar. In Bailey v. Greer the Court followed the established rule that only a majority of the actual membership of a county court and not a majority of the authorized membership is required to adopt a resolution, citing Beckler v. State (1941), 198 Tenn. 372, 280 S.W.2d 913 and Whitehead v. Clark et al. (1922), 146 Tenn. 660, 244 S.W. 479.

The conclusion reached by this Court in Bailey v. Greer, supra, and by the Supreme Court in Beckler v. State, supra, was predicated upon T.C.A. § 5–509, which is as follows:

"5–509. *Majority required to transact business.*—A majority of all the justices *constituting* the quarterly county court, and not merely a majority of the quorum, shall be required to elect county officials required by law to be elected by the quarterly county court, to fix salaries, to appropriate money and to transact all other business coming before the quarterly county court in regular or special sessions." (emphasis supplied)

In Beckler v. State, supra, the Supreme Court said:

"Had the Legislature intended for the expression 'all the justices constituting the quarterly county court' to have a meaning different from that necessarily given it by the holding in Whitehead v. Clark, supra, it would certainly have been easy enough to have used appropri-

ate language so showing." (Supra, p. 377, 280 S.W.2d p. 915)

From a comparison of Section 5.04 of the Metropolitan Charter with T.C.A. § 5–509 it can be readily seen that they do not have the same meaning and, apparently, the framers of the Metropolitan Charter intended for the language " . . . *all of the members to which the council is entitled* . . . " to mean total authorized membership of the council and also, apparently, intended for it to have a different interpretation from the language used in T.C.A. § 5–509, to wit: " . . . *all of the justices constituting the quarterly county court* . . . "

■ In our opinion, the word *"entitled"* was used for a purpose and was intended to preclude action by two-thirds of the Metropolitan Council whose number of members had been reduced by vacancies.

This language used in Section 5.04 of the Charter is plain, clear and unambiguous and to give it the construction as contended by plaintiff would do violence to the Charter.

Although no Tennessee case has been cited wherein language equivalent to that under consideration here has been construed, the Supreme Court of Michigan, in Pollasky v. Schmid (1901), 128 Mich. 699, 87 N.W. 1030, had occasion to consider the question of whether or not an ordinance had been passed over the veto of the Mayor in compliance with Section 103 of the Detroit City Charter which provided:

"That after the veto of any ordinance, resolution or proceeding, the common council shall proceed to reconsider the vote by which the same was passed, and after such reconsideration two-thirds of all the members elected of the common council shall be necessary to pass or adopt the same."

In that case the Michigan Court held that where one of the aldermen had died

and one resigned and their places were vacant, two-thirds of the remaining aldermen was not sufficient to pass an ordinance over a veto and said:

"The purpose, doubtless, was that, when legislation was proposed the wisdom of which was in so much doubt as to meet with the veto of the mayor, before it could become a law it should receive the vote of two-thirds of all the aldermen, when all the wards of the city were fully represented in the council." (Supra, p. 1032)

■ Counsel for plaintiff insists that since the vacancy created by Mr. Carney's resignation could not be filled until after the next general Metropolitan election held on August 5, 1971, the council was entitled to only thirty-nine members at the time said motion was made to override the veto.

We find no merit in this insistence and, therefore, do not agree with it.

For the foregoing reasons the first and third assignments of error are pretermitted but the second assignment of error is sustained, the judgment of the trial Court is reversed and judgment will be entered here declaring that substitute ordinance 71–1404 of the Metropolitan Government of Nashville and Davidson County, Tennessee, was not enacted over the Mayor's veto, but on the contrary, the motion to enact same over the Mayor's veto failed because it was not adopted by two-thirds of all of the members to which the council is entitled as required by Section 5.04 of the Metropolitan Charter.

The costs incurred in the trial Court and costs of this appeal will be paid by the plaintiff, Mid-America Cable Corporation.

SHRIVER, P. J., and TODD, J., concur.